IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT SAUNDERS<br>a/k/a Shamsidin Ali, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civ. Action No. 15-1184-GMS<br>) |
| GOVERNOR JACK MARKELL,<br>et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff, Robert Saunders ("Saunders"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983[1] and the Americans with Disabilities Act, 42 U.S.C. § 12131. (D.I. 3.) Saunders appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 6.)

**I. BACKGROUND**

The complaint names as defendants Governor of the State of Delaware Jack Markell ("Markell"), current DOC Commissioner Robert Coupe ("Coupe"), Delaware Department of Correction ("DOC"), medical contractor Connection Correctional Healthcare Services ("CCHS"),[2] DOC medical director Vincent Carr ("Carr"), DOC food service administrator

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] CCHS appears to be a misnamed defendant as it is not the name of the medical contract provider for the DOC. The current contract health care provider for the DOC is Connections Community Support Programs.

Michael Knight ("Knight"), VCC medical director Richard or William Lynch ("Lynch"),[3] Connections Correctional Healthcare Services ("CCHS") medical director Laurie Spraga ("Spraga"), VCC warden David Pierce ("Pierce"), VCC kitchen director Christopher Senato ("Senato"), CCHS physician assistant Roxanna Kinlock ("Kinlock"), and VCC pharmacists Jane Doe #1 ("Doe #1") and Jane Doe #2 ("Doe 2"). Markell is sued in his official capacity, and Coupe, Carr, Knight, Lynch, Pierce, and Kinlock are sued in their personal capacities.[4]

Saunders appeared before the Board of Parole and Pardons in 2011 and 2014 for commutation recommendations and commutation was unanimously recommended both times, but Markell denied commutation stating, "denied due to totality of circumstance." Saunders alleges that he never had his medical condition presented or investigated as to its truth or seriousness. Saunders states that his conditions were presented for compassionate release to prevent him from possibly dying in a correction facility.[5]

Saunders states that he suffers from a number of medical conditions.[6] Medical testing in

---

[3]The complaint provides two different first names for Lynch.

[4]The complaint does not indicate whether Spraga and Senato are sued in their individual capacities, official capacities, or both.

[5]In November 1976, a Delaware Superior Court jury convicted Saunders of murder in the first degree and related offenses. He was sentenced as an habitual offender to six concurrent life terms, without the possibility of parole or probation. The Delaware Supreme Court affirmed his convictions and sentences on direct appeal. *Saunders v. State*, 401 A.2d 629 (Del. 1979). He has filed numerous petitions for a writ of habeas corpus, all of them denied. *See Saunders v. Markell*, 2013 WL 663407 (D. Del. Feb. 21, 2013).

[6]In 2013, Saunders filed a lawsuit against many of the defendants named in the instant case that raised medical needs claims concerning the events leading up to the events alleged in the instant case. *See Saunders v. Danberg*, 13-1276-GMS (D. Del. 2013). The complaint was dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and Saunders appealed. The appellate court found that the complaint lacked sufficient factual allegations to state an Eighth

2007 revealed that Saunders has a benign, left renal cyst. He was seen by an outside urologist in December 2007 who recommended a follow-up with imaging studies. Studies indicated that Saunders had two percent loss in kidney function. On November 4, 2015, Saunders was advised by consultant nephrologist Dr. Shustin or Dhustin[7] that Saunders' medical records indicated a thirty-five percent loss in kidney function and that the next stage could be dialysis. Kinlock had prescribed two medications for Saunders, but Dr. Shustin told Saunders that those medications, when taken in conjunction with the blood pressure medication he was taking, were "very detrimental to plaintiff." (D.I. 3, ¶ 18.)

Saunders alleges that nephrologists Drs. Yasle and Miller wrote numerous consults for him to be seen by a urologist or endocrinologist and that Carr, Lynch, Spraga, and Kinlock ignored them. He alleges that his kidney function was not monitored or periodically reviewed by outside specialists. Saunders alleges that the next stage of his kidney disease will require dialysis or a kidney transplant. He alleges that his kidney disease shortens his life expectancy, reduces his quality of life, and constitutes a death sentence.

Saunders was taken to Bayhealth Medical Center ("Bayhealth") on October 7, 2014, as a result of massive rectal bleeding. Saunders remained at Bayhealth for five days. He was seen by Dr. Assar Rather ("Dr. Rather") for a consult on October 7, 2014, for issues related to a

---

Amendment claim against former medical directors and the former director of nursing based on their alleged denial of medical care to the prisoner. The court held that although Saunders alleged that a physician stated a urologist was needed to treat his kidney condition, that directors told Saunders he had to seek other options due to the cost of the treatment, and that Saunders was in constant pain as a result, Saunders failed to allege how the directors were involved in his care or that options other than treatment by urologist were not available. *See Saunders v. Danberg*, 613 F. App'x 94 (3d Cir. 2015) (unpublished).

[7]Both names are used.

3

gastrointestinal bleed. A colonoscopy was performed on October 9, 2014, and it revealed severe diverticulosis.

A cervical spine MRI was performed on Saunders on August 26, 2014. (D.I. 5.) Saunders alleges that while hospitalized, testing revealed severe advanced spine disease. Saunders was seen by Dr. Dunbar Alcindor ("Dr. Alcindor") on October 6, 2014 and November 7, 2014 for cervical stenosis with upper extremity weakness and parenthesis conditions. On October 6, 2014, Dr. Alcindor prescribed medication and physical therapy. When Saunders returned on November 7, 2014, Dr. Alcindor recommended C3-4, C4-5, C5-6, C6-7 anterior cervical discectomy and fusion. Dr. Alcindor noted that, because Saunders is incarcerated, he is unable to tolerate the usual course of conservative treatment secondary to his status and prior unacceptable side effects from some of the medications Dr. Alcindor would like to prescribe. Saunders alleges that Dr. Alcindor stated that, had the problem been addressed when first detected, it would not have advanced to its current level. Saunders alleges that Carr, Lynch, and Spraga refused to approve needed spinal surgery ordered by Dr. Alcindor, that he met with Kinlock who conveyed that Saunders would not receive the spinal surgery recommended by Dr. Alcindor, and that the major factors in denying the surgery were Saunders' age and sentence.

Saunders alleges that Carr, Lynch, and Spraga attempted physical therapy instead of surgery and, on May 5, 2015, Lynch indicated that Dr. Alcindor had recommended physical therapy. Saunders alleges that Dr. Alcindor previously stated that physical therapy would never correct Saunders' problems. Saunders alleges that he has been in constant/severe pain since November 2014 and that he has been provided a wheelchair for traveling long distances and a walker for use as needed.

4

Saunders alleges that he is constantly without blood pressure medication and other medication.[8] He alleges that on November 25, 2015, he was called to the medication line and told he was being placed in "finger-stick and 10 units of Lafus [sic] insulin." Saunders alleges that the defendants did not advise him of the reason for the change, and he was not advised of the need for a diet change or provided education concerning his illness. Saunders alleges that he was not placed on a diet to address diabetes, and he is required to eat "current alleged heart-health food available," which is high in soy.

Saunders has been consuming soy since 2011. He alleges that his high consumption of soy protein places him at risk to suffer from adverse health effects such as thyroid disorder, digestive distress, immune system breakdown, and soy allergies. Saunders complained to the defendants about the soy diet and requested an alternative diet or medical treatment for all medical conditions related to excess soy consumption. He alleges that prior to the introduction of soy into his diet, he had no complaints associated with a high soy intake. Saunders alleges health effects as a result of the soy consumption that include shortness of breath, fatigue, severe constipation and/or diarrhea, rashes, and heart issues.

Saunders alleges that the B-building library and the L-building law library/computer have areas that are not handicap accessible and do not have handicap accessible toilets. Saunders alleges that the defendants are aware of this problem via the grievance process and letters.

Saunders alleges that the medical defendants did not monitor his medical conditions.

---

[8]Attached to the complaint are a number of medical requests seeking renewal of medications taken by Saunders. (D.I. 3 at 11-16.)

He alleges deliberate indifference to a needed operation, denial of a urologist consult following requests by a nephrologist, failure to comply with the ADA regarding access to L-building toilets, serious problems holding a pen, denial of a wordprocessor or a typewriter, and violations of the Eighth and Fourteenth Amendments of the United States Constitution. He seeks declaratory and injunctive relief, as well as punitive damages. In addition, he seeks class certification.

## II. STANDARD OF REVIEW

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Saunders proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-

28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Saunders leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Eleventh Amendment

Markell is sued in his official capacity. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009) (unpublished). Accordingly, § 1983 claims for monetary damages against a state official in his official capacity are barred by the Eleventh Amendment. *See id.*

However, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted).

8

The State of Delaware has neither consented to Saunders' suit nor waived its immunity. Therefore, the claims against Markell, in his official capacity, are dismissed to the extent that Saunders seeks monetary damages from him.

### B. Personal Involvement/Respondeat Superior

Coupe, Knight, Pierce, and Senato are named as defendants based upon their supervisory positions. (D.I. 3, ¶¶ 5, 8, 9, 12, 13.) In addition, the complaint alleges that Markell, as governor, has control over the monies allocated to the DOC and the authority to appoint and remove subordinates. (*Id.* at ¶ 4.)

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (unpublished) (citing *Iqbal*, 556 U.S. at 675-77; *Rode v. Dellarciprete*, 845 F.2d at 1207).

Saunders provides no specific facts with regard to the foregoing supervisory defendants' personal involvement as is required to state a claim for violations of his constitutional rights. Instead, he alleges in a conclusory manner that the defendants are responsible for the alleged constitutional violations by reason of the matters under their purview. Nor are there facts

9

indicating that the foregoing defendants expressly directed the alleged deprivation of Saunders' constitutional rights, or created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation.

In addition, prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236. Further, the complaint makes broad generalizations, but fails to identify specific policies or practices to support its allegations. *See Estate of Chance v. First Corr. Med.*, 329 F. App'x 340 (3d Cir. 2009) (unpublished) (State prison officials were not deliberately indifferent to inmate's serious medical condition, in violation of Eighth Amendment, as result of their cost containment practices, where there was no evidence indicating that officials knew or had any reason to believe that prison medical staff were not treating or were mistreating inmate, or that officials were indifferent to known risks caused by their cost containment practices.)

For the above reasons, the court will dismiss the claims against Markell, Coupe, Knight, Pierce, and Senato as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### C. Medical Needs

Saunders raises several medical needs claims. Saunders alleges he has a kidney condition that is not monitored, that a consulting physician has recommended cervical spine surgery, that he has a gastrointestinal condition, that his medication is not appropriately administered because the medication is not adequately refilled, and that he is given a diet high in soy protein which has resulted in adverse health conditions.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

Saunders, who has diminished kidney function, alleges that nephrologists Drs. Yasle and Miller wrote numerous consults for him to see a urologist or endocrinologist. Saunders was told that, because he also suffers from hypertension, kidney damage may occur more quickly due to the combination of diabetes and hypertension. Saunders alleges that Carr, Lynch, Spraga, and Kinlock ignored the requests for consults. He will be allowed to proceed with this claim.

Dr. Alcindor recommended Saunders undergo spinal surgery after concluding that he is unable to tolerate the usual course of conservative treatment and that would cause unacceptable side effects from medications he would have liked to prescribe. Saunders alleges that Carr, Lynch, and Spraga refuse to approve the needed surgery due to cost considerations and opted to provide Saunders physical therapy despite Dr. Alcindor's recommendation to contrary. In addition, Kinlock advised Saunders that the surgery was denied based upon his age and life without parole sentence. Saunders will be allowed to proceed with this claim.

Saunders alleges that he has constantly been without blood pressure medication and other medication. In a sick call slip dated March 15, 2015, Saunders stated that he had been without blood pressure medication for over fifteen days and was told it was never reordered. Saunders was told that he was on blood pressure medication, but of a different type than the one requested in the sick call slip. A sick call slip dated May 12, 2015, that sought a reorder of blood pressure medication and that indicated Saunders had been without the medication for over seven days, was referred to the pharmacy. A sick call slip dated May 21, 2015 indicating that Saunders had been without blood pressure medication states that the medication was renewed "yesterday." A sick call slip dated May 22, 2015 seeking renewal of various medications that had been removed from the computer, referred to a follow-up to verify that the medications were currently in the computer. A sick call slip dated October 13, 2015 indicating that Saunders ran out of medication was referred to the pharmacy.

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)). Saunders does not direct his

12

allegations concerning medication issues to any defendant. In listing Doe #1 and Doe #2 pharmacists as parties, he describes them, in general terms and a conclusory manner, as being responsible for his medication, but the facts, as alleged, do not support his conclusory claims against the Doe pharmacists. Thus, the allegations, without more, do not rise to the levels of constitutional violations. Accordingly, the court will dismiss the claims against Doe #1 and Doe #2 for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Saunders will be given leave to amend this claim.

Saunders alleges that he is not provided with a diet to address his diabetic condition and instead is required to eat "alleged heart-healthy" food which is high in soy. The high soy diet has caused him personal and bodily injury. Saunders alleges that he complained to the defendants and requested an alternative diet or medical treatment for all medical conditions related to excess soy consumption. Saunders does not indicate when he made the complaints or to whom he made the complaints. Instead he alleges in general terms that he made complaints to the individuals on unnamed dates. Therefore, the court will dismiss the medical diet claim for failure to state a claim upon which relief may be pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Saunders will be given leave to amend this claim.

Saunders has also named CCHS as a defendant. CCHS is described as the medical provider for inmates under the custody/control of DOC. When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992).

In order to establish that CCHS is directly liable for the alleged constitutional violations, a plaintiff "must provide evidence that there was a relevant [CCHS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The complaint does not refer to CCHS other than to describe it in the party section. Nor does it speak to any relevant policy or custom that allegedly violated Saunders' constitutional rights. Accordingly, the court will dismiss the claim for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Saunders will be given leave to amend this claim.

### D. ADA

Saunders alleges that the DOC violated his rights under the ADA because he utilizes two building that are not handicap accessible. *See* ADA, Title II, 42 U.S.C. § 12101 *et seq.* Title II of the ADA prohibits discrimination against the disabled in public services. *See* 42 U.S.C. § 12132; Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* Title II applies to the state prisons, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998), and authorizes private lawsuits for both money damages and injunctive relief against public entities that violate its provisions. *See* 42 U.S.C. § 12133.

To succeed on a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 550 (3d Cir. 2007). Under Title II, a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA. *See Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa*, 483 F. App'x 759, 763 (3d Cir. 2012) (unpublished); *see also* 28 C.F.R. § 35.130(b)(7) (requiring public entity to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability").

Saunders has been provided a wheelchair and walker to aid his mobility. Saunders' allegations concerning the restrictions on handicap toilets suggest that the restrictions hinder his access and participation in prison programs and other activities such as use of the libraries. Saunders will be allowed to proceed on his ADA claims against the DOC.

### E. Commutation

While not clear, it appears that Saunders attempts to raise a claim against Markell for denying his request for a compassionate commutation based upon Saunders' medical condition. Saunders sought the same relief from this court in 2011 when he filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The petition was summarily dismissed. *See Saunders v. Markell*, 2013 WL 663407 (D. Del. Feb . 21, 2013.

It is well-settled that an inmate has no constitutional or inherent right to the commutation of his sentence. *See Ohio Adult Parole Auth. v. Woodward*, 523 U.S. 272, 280 (1998); *Conn. Bd.*

15

*of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). Saunders' claim fails as a matter of law. Therefore, it will be dismissed as frivolous pursuant 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

## IV. CONCLUSION

For the above reasons, the court will: (1) allow Saunders to proceed against the defendants Carr, Lynch, Spraga, and Kinlock on the kidney and cervical spine surgery medical needs claims and the ADA claim against the DOC; (2) dismiss the defendants Markell, Coupe, Knight, Pierce, and Senato as the claims against them are legally frivolous; and (2) dismiss the medication claim against Doe #1 and Doe #2, the medical diet claims, and the claims against CCHS for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and § 1915A(b)(1). Saunders will be given leave to amend the medication, medical diet claims, and claims against CCHS. The court will address the issue of class certification upon the filing of a properly supported motion.

An appropriate order will be entered.

_May 16_, 2016
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE

16