IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT SAUNDERS a/k/a Shamsidin Ali, )
)
Plaintiff, )
)
v. ) C.A. No. 15-1184 (MN)
)
DEPARTMENT OF CORRECTION, et al., )
)
Defendants. )

## MEMORANDUM OPINION

Robert Saunders a/k/a Shamsidin Ali, James T. Vaughn Correctional Center, Smyrna, Delaware. *Pro Se* Plaintiff.

Joseph Clement Handlon, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

January 11, 2019
Wilmington, Delaware

NOREIKA, U.S. District Judge:

On December 21, 2015, Plaintiff Robert Saunders a/k/a Shamsidin Ali ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983[1] and the Americans with Disabilities Act, 42 U.S.C. § 12131. (D.I. 3). He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 6). Defendant Dr. Vincent Carr ("Dr. Carr") filed a crossclaim for contribution and indemnification against the medical co-defendants on September 9, 2016.[2] (D.I. 21). Pending before the Court are the motion of Dr. Carr and the Delaware Department of Corrections ("DOC") (collectively, "Defendants") for summary judgment (D.I. 54) and Plaintiff's motion for sanctions. (D.I. 106). For the reasons set forth below, the Court will (1) grant Defendants' motion for summary judgment, (2) dismiss Dr. Carr's crossclaim as moot, and (3) deny Plaintiff's motion for sanctions.

I. **BACKGROUND**

The Complaint raises an Americans with Disabilities Act ("ADA") claim against Defendant Delaware Department of Correction ("DOC") and a medical needs claim against Dr. Carr. (D.I. 3). All other defendants and claims have been dismissed. (*See* D.I. 10; D.I. 116).

The Complaint alleges that Plaintiff suffers from several medical conditions.[3] On November 4, 2015, Plaintiff was advised by consultant nephrologist that his medical records

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] The Court dismissed medical defendants Michael Knight, William Lynch, and Dr. Laurie Spraga, none of whom were served, on January 4, 2019. (D.I. 116).

[3] In 2013, Plaintiff filed a lawsuit against many of the defendants named in this case and raised medical needs claims concerning the events leading up to the events alleged in the

1

indicated a stage three kidney disorder with thirty-five percent kidney function loss. (D.I. 3 at ¶ 18). Medications prescribed for Plaintiff were discontinued since, when taken in conjunction with blood pressure medication, they were "very detrimental." (*Id.*). The Complaint alleges that two nephrologists wrote numerous consults for him to see a urologist or endocrinologist. (*Id.* at ¶ 19). Plaintiff alleges that he was told because he also suffers from hypertension, kidney damage may occur more quickly due to the combination of diabetes and hypertension. (*Id.*). Plaintiff alleges that Dr. Carr, along with the dismissed medical defendants, ignored the requests for consults. (*Id.*).

Plaintiff also alleges that Dr. Carr, along with the dismissed medical defendants, refused to approve medically needed spinal surgery due to cost considerations. (*Id.* at ¶¶ 19-20). Plaintiff alleges that Dr. Carr, along with the dismissed medical defendants, opted to provide Plaintiff with physical therapy despite a medical recommendation to the contrary. (*Id.* at ¶ 20). In addition, Plaintiff alleges that he was denied surgery based upon his age and life without parole sentence. (*Id.* at ¶ 22).

Plaintiff further alleges that he has been in constant/severe pain since November 2014 and that he has been provided a wheelchair for traveling long distances and a walker for use as needed. (*Id.*). He alleges that two buildings he uses, the B-building library and the L-building (law

---

instant case. See *Saunders v. Danberg*, 13-1276-GMS (D. Del. 2013). The complaint was dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and Plaintiff appealed. The appellate court found that the complaint lacked sufficient factual allegations to state an Eighth Amendment claim against former medical directors and the former director of nursing based on their alleged denial of medical care to the prisoner. The court held that although Plaintiff alleged that a physician stated a urologist was needed to treat his kidney condition, that directors told Plaintiff he had to seek other options due to the cost of the treatment, and that Plaintiff was in constant pain as a result, Plaintiff failed to allege how the directors were involved in his care or that options other than treatment by a urologist were not available. See *Saunders v. Danberg*, 613 F. App'x 94 (3d Cir. 2015).

library/computer), have areas that are not handicap accessible and do not have handicap accessible toilets. (*Id.* at ¶ 23). Plaintiff alleges Defendants are aware of this problem via the grievance process and letters.

Plaintiff's medical records indicate that he was taken to Bayhealth Medical Center on October 7, 2014, because of massive rectal bleeding. (D.I. 5 at 7). A colonoscopy performed on October 9, 2014, revealed severe diverticulosis. (*Id.* at 9).

A cervical spine MRI performed on Plaintiff on August 26, 2014, revealed severe C3-4, 4-5, 5-6, 6-7 stenosis, compression greater at C3-4 with cord signal changes. (*Id.* at 10-11). Plaintiff was seen by Dr. Dunbar Alcindor ("Dr. Alcindor") on October 6, 2014 and November 7, 2014 for cervical stenosis with upper extremity weakness and parenthesis conditions. (*Id.* at 6). At the October 6, 2014 visit, Plaintiff indicated that he was not interested in any surgical procedure and opted to undergo conservative treatment. (*Id.*). Dr. Alcindor prescribed medication and physical therapy. (*Id.*). When Plaintiff returned on November 7, 2014, Dr. Alcindor recommended C3-4, C4-5, C5-6, C6-7 anterior cervical discectomy and fusion. (*Id.* at 5). Dr. Alcindor noted that, because Plaintiff is incarcerated, he is unable to tolerate the usual course of conservative treatment secondary to his status and prior unacceptable side effects from some of the medications Dr. Alcindor would like to prescribe. (*Id.*). Plaintiff was advised to consider his options and notify Dr. Alcindor's office. (*Id.*).

Dr. Carr's declaration states that he is the Medical Director of the Bureau of Correctional Health Services of the Delaware DOC. (D.I. 36-1 at ¶ 1). He did not work for the DOC prior to October 2012. (*Id.*). As Medical Director, Dr. Carr does not perform patient care for DOC inmates. (*Id.* at ¶ 2). According to Dr. Carr, he made no decisions regarding Plaintiff's healthcare and has not prevented any medical procedures, including surgery. (*Id.*). Dr. Carr

3

does not participate in any clinical decisions, approval, or authorization processes. (*Id.*). He was not involved in Plaintiff's care for back pain and has not interfered with any decision that Plaintiff receive back surgery. (*Id.* at ¶ 5). Nor do Plaintiff's records indicate interference with a referral for a kidney evaluation or recommendation for spinal surgery. (*Id.*). According to Dr. Carr, a neuro-surgeon had been waiting for Plaintiff's decision concerning an anterior cervical discectomny and fusion procedure. (*Id.* at ¶ 10). Dr. Carr states that he has not interfered with referrals to outside consultants. (*Id.* at ¶ 3). On one occasion in 2016, Dr. Carr upheld a medical grievance submitted by Plaintiff when he claimed there were "obstacles" in seeing his nephrologist. (D.I. 36-1 at ¶ 4, 8-12).

Dr. Carr reviewed Plaintiff's electronic health record and it indicates that: (1) with regard to Plaintiff's kidney condition, the records do not raise a concern that an outside consultation was required (D.I. 36-1 at ¶ 4); (2) Plaintiff was scheduled to see a urologist in January 2017 (*id.*); (3) the medical records do not support Plaintiff's position regarding his back condition, Plaintiff had indecision about receiving back surgery, numerous tests were performed, and Plaintiff had a neurosurgical consultation on December 8, 2016 that indicated Plaintiff's overall strength and condition were stable (*id.* at ¶¶ 5, 10); (4) Plaintiff receives treatment and medication for his diabetes, kidney insufficiency, and blood pressure (*id.* at ¶¶ 6, 7); (5) Plaintiff was seen by an on-site nephrologist in November 2015 (*id.* at ¶ 6); (6) he was seen by a podiatrist in February 2016 (*id.* at ¶ 7); (7) the records do not indicate a reoccurrence of diverticulitis for which he was treated in October 2014 (*id.* at ¶ 8); and (8) the soy diet provided to Plaintiff is recommended for individuals who have diabetes with kidney disease (*id.* at ¶ 9).

Defendants move for summary judgment on the grounds that: (1) Dr. Carr lacks the requisite personal involvement to impose liability; (2) the record demonstrates that Plaintiff

4

receives extensive medical treatment; (3) Dr. Carr is entitled to qualified immunity; (4) there is no evidence of record to support Plaintiff's claim that the DOC is in violation of the ADA; and (5) Plaintiff did not exhaust the ADA claim.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989).

## III. DISCUSSION

### A. Personal Involvement/*Respondeat Superior*

Dr. Carr contends summary judgment is appropriate given that the unrebutted evidence demonstrates his lack of personal involvement. Plaintiff responds that Dr. Carr's duties included

5

overseeing the services provided by the DOC's medical contractor Connections Community Support Program, Inc. ("Connections"). Plaintiff contends that through his grievances, Dr. Carr was aware of Plaintiff's spinal surgery to address degenerative disc disease.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of *respondeat superior* and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675-77 (2009); *Rode v. Dellarciprete*, 845 F.2d at 1207).

Plaintiff rests his theory of liability upon Dr. Carr based upon his supervisory position. There is no evidence that Dr. Carr had personal involvement with regard to Plaintiff's medical care. Plaintiff contends that Dr. Carr was aware of his degenerative disc disease through grievances Plaintiff submitted, but there is no evidence of record to support that position.

Nor does the evidence support a finding that Dr. Carr expressly directed the alleged deprivation of Plaintiff's constitutional rights or created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Plaintiff makes bald assertions with regard to Dr. Carr's involvement, but the unrefuted evidence is that Dr. Carr does not perform patient care, made no decisions regarding Plaintiff's healthcare, did not prevent or interfere with medical procedures (including surgery),

interfere with referrals to consultants, does not participate in any clinical decisions, approval or authorization processes, was not involved in Plaintiff's care for back pain, and has not interfered with any decision that Plaintiff receive back surgery.

No reasonable jury could find in favor of Plaintiff as to the claims he raises against Dr. Carr. Therefore, Defendants' motion for summary judgment will be granted as to those claims.

### B. Medical Needs

Dr. Carr contends that the record demonstrates that Plaintiff has been, and continues to receive, extensive medical treatment. Plaintiff responds that the record reflects that all individual defendants had some involvement either in the treatment, denial of treatment provided to Plaintiff, or in the decision-making with regard to the type of treatment he did not receive. He further responds that the medical records indicate that when Connections became the medical care provider, he was referred to a number of specialist who recommended various types of treatment and the records will show years when Plaintiff received no treatment or treatment contrary to that recommended by specialists. Plaintiff argues that Connections had a policy that it does not authorize surgery unless the matter is life-threatening. Connections, however, has been dismissed from this action and there is no evidence that its policy is attributable to Dr. Carr.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of

7

serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle,* 429 U.S. at 104-05.

Even had the record demonstrated Dr. Carr's personal involvement in Plaintiff's medical care, the record demonstrates Plaintiff's receipt of medical care and treatment for his ongoing medical conditions. Plaintiff complains that he has not received back surgery, but his medical records indicate that he opted first for conservative treatment and then that Plaintiff was to consider his options and notify the office of the physician recommending surgery "at that time." (D.I. 5 at 6). The record does not indicate if Plaintiff took that step. In addition, the evidence before the Court is that Plaintiff received, and continues to receive, care for his numerous medical conditions.

C.  ADA

Defendants contend there is no evidence of record to support Plaintiff's claims that the DOC is in violation of the ADA. The DOC argues that there is no evidence that the DOC denied Plaintiff a protected privilege or right by reason of a disability. It also argues that it is immune from suit unless Plaintiff can show that the conduct "actually violates the Fourteenth Amendment." As to Plaintiff's claims that uses two building that are not handicap accessible, Defendants argue that Plaintiff has not shown or alleged that he is housed in those buildings, is unable to use other bathrooms, or that the referenced bathrooms are the only ones to which he has access. Defendants also argue that there is no evidence to show that the building is covered by the ADA. Finally, Defendants claim that Plaintiff has not properly exhausted the ADA claims through the DOC's grievance process.

Plaintiff did not address the ADA claim in his opposition to Defendants' motion and in Defendants' reply they contend Plaintiff waived and abandoned the claim. (D.I. 66, 67). Without seeking leave, Plaintiff filed an "addendum" which is actually a surreply.[4] Plaintiff's surreply contends that D-Building is not handicap accessible and indicates that he is currently housed in a handicap cell in the Security Housing Unit even though he has not been cited for any rule infractions.

Title II of the ADA prohibits discrimination against the disabled in public services. *See* 42 U.S.C. § 12132; Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* Title II applies to the state prisons, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998), and authorizes private lawsuits for both money damages and injunctive relief against public entities that violate its provisions. *See* 42 U.S.C. § 12133.

To succeed on a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; and (4) by reason of his disability. *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 550 (3d Cir. 2007). Under Title II, a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA. *See Muhammad v. Court of Common Pleas of Allegheny Cty., Pa*, 483 F. App'x 759, 763 (3d Cir. 2012); *see also* 28 C.F.R.

---

[4] Pursuant to Rule 7.1.2 (b) of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, no additional papers shall be filed absent Court approval after the filing of the moving party's reply. Given Plaintiff's *pro se* status, however, the Court has accepted and considered his surreply.

§ 35.130(b)(7) (requiring public entity to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability").

A public entity's failure "to take reasonable measures to remove architectural and other barriers to accessibility," *i.e.* satisfy the "reasonable modification requirement," may constitute denial of services and discrimination sufficient to satisfy the second two prongs of the Title II inquiry. *Tennessee v. Lane*, 541 U.S. 509, 531 (2004). The "reasonable modification requirement can be satisfied in a number of ways." *Id.* at 532. For facilities built or altered after 1992, the regulations require compliance with specific architectural accessibility standards. *Id.* (citing 28 C.F.R. § 35.151). For older facilities, "a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services." *Id.* (citing 28 C.F.R. § 35.150(b)(1)); *see also Douris v. Bucks Cty. Office of Dist. Attorney*, 2004 WL 1529169, at n.11 (E.D. Pa. July 6, 2004). "Only if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes." *Id.*

Defendants note there is no evidence that Plaintiff is housed in the two buildings, although he does use them. Plaintiff indicates that he is housed in a handicap accessible cell in the SHU.

In addition, Defendants argue that Plaintiff has failed to show that the buildings are covered by the ADA. Defendants refer to the DOC web-site that indicates the VCC was opened in 1971 and expanded in 1996. *See* https://doc.delaware.gov/views/jtvcc.blade.shtml (last visited Jan. 10, 2019). The record is void of the dates of construction of the two buildings at issue, there is no evidence of how the buildings are non-compliant or deficient other than to state Plaintiff is unable to access the toilets, and the record does not indicate if Plaintiff was, or was not, provided alternative services. Plaintiff, as the non-movant, has simply failed to meet the elements of his

ADA claim. His assertions, without supporting evidence, lead the Court to conclude that no reasonable jury could find in his favor on the ADA claim. Therefore, the Court will grant Defendants' motion for summary judgment.

### D. Cross-Claim

As discussed, no reasonable jury could find on behalf of Plaintiff. In granting Defendants' motion for summary judgment, Plaintiff's claims are extinguished, and the Court's rulings render moot Dr. Carr's cross-claims for contribution and indemnity. *See, e.g., A.M. v. Landscape Structures, Inc.*, No. 1:14-1376, 2017 WL 2215276 (M.D. Pa. May 19, 2017); *US Bank Nat'l Assoc. v. PNC Bank NA.*, No. 14-2845, 2015 WL 5771823 (E.D. Pa. Oct. 20, 2015) (dismissing as moot cross-claims for indemnification upon grant of summary judgment for defendants); *see also Owens v. Aetna Life & Cas. Co.*, 654 F.2d 218, 220 n.2 (3d Cir. 1981) (as a practical matter Aetna's pending cross-claim for contribution/indemnity became groundless once Aetna's motion for summary judgment was granted). Therefore, Dr. Carr's cross-claims raised against the medical defendants (D.I. 21) will be dismissed as moot.

### E. Motion for Sanctions

In his motion for sanctions, Plaintiff states that he has not had physical access to a wheelchair since December 2017 and that the wheelchair was seized by Nurse Practitioner Carla in early December 2017 without consulting the physicians who assigned Plaintiff the wheelchair. (D.I. 106, ¶¶ 3, 4). Plaintiff seeks an order imposing sanctions upon Defendants based upon these facts.

The motion will be denied. There is no indication that Dr. Carr or the DOC had any involvement in the acts described. Further, the individual who allegedly seized the wheelchair is not a party to this action.

## IV. CONCLUSION

For the above reasons, the Court will: (1) grant Defendants' motion for summary judgment (D.I. 54); (2) deny Plaintiff's motion for sanctions (D.I. 106); and (3) dismiss as moot Dr. Carr's cross-claim for contribution and indemnity against medical Defendants (D.I. 21).

An appropriate order will be entered.